No. 12,691.

CITY AND COUNTY OF DENVER ET AL. *v.* GIBSON ET AL.

(24 P. [2d] 751)

Decided July 3, 1933.

Mr. Thomas H. Gibson, Mr. Frank L. Hays, Mr. George Hetherington, Mr. Karl C. Brauns, for plaintiffs in error.

Mr. Nathan H. Creamer, Messrs. Quiat, Ginsberg & Quiat, for defendants in error.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

Suit to enjoin the enforcement of an order of the manager of health and charity of the City and County of Denver, requiring those engaged in marketing milk and cream in Denver to cause the same to be pasteurized. Injunction was granted, and error is assigned.

It appears that defendants in error are engaged in dairying, and in accordance with a city ordinance are licensed to sell their product in Denver. They were granted injunctive relief against the municipality and its manager of health and charity, from enforcing the order complained of, the purpose of which was to preclude the sale of raw milk and cream. While incidental questions are involved, principally the concern is as to the power of the manager of health and charity to make, and the

124

city to enforce, the order. The record shows that, other than that their product was not being pasteurized, the milk and cream delivered by defendants in error to their customers in Denver met all requirements.

██ It is apparently conceded that by constitutional and charter authority the city council was empowered to pass ordinance No. 122, series 1924, regulatory of the dairying business, and that pursuant to its provisions it was lawful for licensed dairymen to sell and deliver raw milk and cream of a certain standard in Denver. The manager of health and charity, specifically justifying under section 4 of the ordinance, ordered that after a certain time milk and cream which had not been subjected to pasteurization should not be sold. The order reads as follows:

"Pursuant to the provisions of the city milk ordinance, No. 122, series of 1924, section 4, paragraph 1, concerning regulations governing the sale of milk and cream, the following health order is hereby declared in force in the City and County of Denver, on and after February 1, 1930:

"Inasmuch as unpasteurized milk or cream may be prejudicial to public health, it is hereby ordained that on and after February 1, 1930, it shall be unlawful for any person, firm or corporation to sell, hold for sale, or offer for sale for human consumption, any milk or cream that has not been pasteurized to the satisfaction of the city health department.

"This order is for the purpose of safeguarding the health of the residents of the City and County of Denver."

Section 4 of the ordinance, referred to in the order, is in the following language: "The manager of health and charity is hereby authorized and empowered from time to time to formulate such rules and regulations not inconsistent with the provisions of this ordinance, necessary to procure a standard of milk required by the provisions of this ordinance, and it shall be unlawful for any person

to fail, neglect or refuse to comply with such rules and regulations. The manager of health and charity shall have power to close the establishment, cancel a license, or both, when he shall find that the holder thereof has violated any of the provisions of this ordinance or failed or neglected to comply with his rules, or regulations. The manager of health and charity may from time to time publish the results of examinations and the tests of milk, cream, skimmed milk, buttermilk, evaporated, sterilized or condensed milk, skimmed milk, cream, or other dairy products produced by any person, corporation or association.''

No better words can be found to express our views of the proper construction of this ordinance and the asserted regulation, than those employed by the learned trial judge. He held:

''It is contended by defendants that the order requiring that dealers in raw milk shall desist from sale thereof on and after February 1, 1930, is within the power, as well as that it is the duty of the manager to make and enforce, and is a reasonable rule and regulation, in the interest of the public health. This proposition is denied by plaintiffs. The council has acted by ordinance; licenses have been granted to plaintiffs and many other dealers in raw milk and cream who have carried on what has been recognized by city ordinance as legitimate business, and a substantial trade and good will has been built up to supply an existing demand, so it is claimed. With such ordinance so licensing and recognizing such business, can the manager of health by mere fiat set aside and ignore such ordinance? I believe the query must be answered in the negative. The manager of health was affirmatively authorized by the council, in Sec. 4 of its ordinance, which is the speaking of the legislative voice, 'to formulate such rules and regulations not inconsistent with the provisions of this ordinance necessary to procure a standard of milk required by the provisions of this ordinance.' Can he make an order which is apparently

inconsistent therewith? The ordinance permits the sale of milk both raw and pasteurized, and establishes certain specific scientific standards therefor. Can the manager, in effect, repeal the ordinance by an attempt to 'ordain,' as he has done, by the express terms of the order, that it shall be unlawful to sell milk and cream on and after February 1, 1930, unless the same has been pasteurized, which directly contradicts the express terms of the ordinance? * * * My conclusion in the present case is that * * * the manager of health and charity was and is without power to make and enforce the order mentioned.''

■■ Plaintiffs in error urge that injunction does not lie, for, they say, it would operate to restrain municipal officials from enforcing an ordinance, which may not be done. *Brunstein v. Ft. Collins,* 53 Colo. 254, 125 Pac. 119; *Olympic Athletic Club v. Speer,* 29 Colo. 158, 67 Pac. 161; *Denver v. Beede,* 25 Colo. 172, 54 Pac. 624, are cited. The general doctrine announced in those cases is not open to question. The answer is that defendants in error do not seek to enjoin officials attempting to enforce an ordinance, but that in marketing raw milk and cream according to ordinance they shall enjoy their lawful rights. In the formal order below care was taken to make plain there was no purpose to interfere with the enforcement of the ordinance. The conclusion is inevitable that the manager of health and charity assumed a legislative function, and promulgated an order in derogation of an existing ordinance. Not only so, but it appears that the full power of the executive branch of the city government was being invoked in aid of the enforcement of his unauthorized order. In the circumstances, it seems to us that justice warranted the writ of injunction. *People v. Hamilton,* 177 N. Y. S. 222. We are not unmindful of the salutary rule that health officials should be privileged to exercise reasonable judgment, still that their acts may be legal they must have regard for the source of their power and the limitations attending. In our scheme of govern-

ment, national, state, and included or subordinate governmental activities, such as Denver, the laws and rules, in the large, emanate from the legislative branch. In effective administration executive officers must of course enjoy reasonable freedom of action, but it does not follow that power exists in that source to work repeal of legislation. The particular ordinance invoked here contains the usual grant to the manager of health to make rules and regulations, but throughout the section setting forth the grant it appears that the ordinance itself marks the extent of the power. Whatever the manager was empowered to promulgate was to be subordinated to the provisions of the ordinance. The controlling principle, and the language of the ordinance makes the point clear, was that the acts of the health manager were to bring about a "standard of milk required by the provisions of this ordinance," but that such rules and regulations must not be inconsistent with the ordinance.

We deem it important to observe, as did the trial court, that the order was not made because of the existence of an epidemic or other emergency, but evidently resulted from the conception of the manager of health that his powers under the ordinance authorized him to remake in measure the very ordinance to which he looked for his authority. In this we do not find justification.

The judgment is affirmed.